# EXHIBIT 1

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

http://www.wsj.com/articles/the-rise-of-the-stichting-an-obscure-takeover-defense-1429716204

BUSINESS

# The Rise of the 'Stichting,' an Obscure Takeover Defense

Mylan puts in place an ancient but powerful Dutch legal structure to fend off Teva's hostile bid



Mylan, which operates out of Canonsburg, Pa., created an obscure but powerful legal vehicle in the Netherlands called a "stichting" that gets veto rights over any hostile takeover. PHOTO: KRISTOFFER TRIPPLAAR/SIPA

By SHAYNDI RAICE And MARGOT PATRICK

Updated April 22, 2015 12:15 p.m. ET

LONDON—A centuries-old Dutch legal structure that has become a popular self-defense tool for companies and wealthy individuals could play a leading role in a takeover battle now shaping up.

Israel's Teva Pharmaceutical Industries Ltd. said Tuesday it is bidding $40 billion for Mylan NV, a drug company with headquarters in Canonsburg, Pa., but incorporated in the Netherlands. In early April, moving preemptively to thwart such an offer, a Dutch law firm submitted paperwork on Mylan's behalf to the Netherlands trade registry to create an obscure but powerful legal vehicle called a "stichting."

RELATED

- Proposed Drug Merger Sets Torrid Pace in 2015 (http://www.wsj.com/articles/teva-offers-to-buy-mylan-for-82-a-share-1429620984)
- Teva Offers $40 Billion to Buy Rival Mylan (http://www.wsj.com/articles/teva-offers-to-buy-mylan-for-82-a-share-1429620984)
- Deal Shows Corporate Israel's M&A Hunger (http://www.wsj.com/articles/tevas-deal-for-mylan-shows-corporate-israels-m-a-hunger-1429641179)
- Heard on the Street: Mylan Is Too Big for Teva (http://www.wsj.com/articles/mylan-is-too-big-a-pill-for-teva-1429640106)
- Heard on the Street: Mylan's Lesson from Deal-Making's Past (http://www.wsj.com/articles/mylans-lesson-from-deal-makings-past-1429632955?)

The entity, named Stichting Preferred Shares Mylan, is essentially an empty shell. But it possesses special powers, thanks to a shareholder-approved provision tucked into the paperwork for a previous Mylan acquisition: If Mylan ever receives an unsolicited takeover bid, the stichting can get veto rights over any takeover.

Stichtings, which mean "foundations" in Dutch, have been around for hundreds of years, primarily used by Dutch charities. During the World War II, Dutch companies transferred their ownership to stichtings based in the Dutch Antilles in the Caribbean to protect assets from the German occupiers, experts say.

More recently, stichtings have become a tool of choice for multinational corporations to protect against a variety of perceived ills, anything from hostile takeovers to unwanted taxes to international sanctions.

Their key attribute is that stichtings, often referred to as orphan foundations, don't have any legal owners. That means they can be used to put money or other assets outside the reach of government authorities, competitors or shareholders. The stichting's purpose and the responsibilities of its board of directors can be tailored to the vehicle's needs.

"The stichting is where the buck stops. There is no owner," said Philippe Steffens, a structured-finance lawyer at Baker & McKenzie in Amsterdam.

Here's how it works in Mylan's case: In December, the company asked shareholders to approve its acquisition of a non-U.S. drug business from Abbott Laboratories. Tucked into the nearly 200-page securities filing were a few sentences giving Mylan the right to create a stichting and give it the power to get special shares in the case of a hostile takeover. On April 3, the stichting was created with the stated aim of safeguarding Mylan's strategy, mission and independence. Its board, consisting of Dutch lawyers and professional directors handpicked by Mylan, has "sole discretion" to receive the powerful shares with veto rights at any time.

That was just one of the defensive maneuvers Mylan deployed. Several days later, Mylan launched a $28.9 billion bid for rival pharmaceutical company Perrigo Co. Analysts and investors viewed that bid—which Perrigo rejected on Tuesday—as an effort to make Mylan so big that it would no longer be feasible for Teva to acquire it. Mylan had said since the Abbott deal that it planned on pursuing more acquisitions.

---

> '*All sorts of underhanded and nefarious activity goes on through these kinds of structures*'
>
> —Joshua Simmons, policy counsel at Global Financial Integrity

---

Teva clearly isn't deterred by the stichting's existence.

People familiar with the bidding process noted that many U.S. companies have poison pills, and yet hostile deals still happen. They also said that the stichting board, not Mylan management, would be the one to independently evaluate the rationale for the deal.

And there's no guarantee that Mylan, which as a U.S. headquartered company faces high standards for corporate governance, would actually rely on the stichting to block a potential deal. One investment banker involved in the deal said using the stichting for such purposes would be the equivalent of "the nuclear option."

Because of their increased popularity and their design to avoid outside influences, stichtings are growing controversial in some quarters.

"All sorts of underhanded and nefarious activity goes on through these kinds of structures," said Joshua Simmons, policy counsel at Global Financial Integrity, a Washington-based research organization studying tax evasion and illicit financial flows. "It's emblematic of the problem with creating legal fictions like this that allow you to ... hide assets in broad daylight, solely through the operation of one country's legal system."

More than 125,000 stichtings are registered in the Netherlands, according to its company register. Their creators hail from Europe, the U.S. and elsewhere.

Banks are among the biggest users. According to lawyers and public records, stichtings are the shareholders in hundreds of special-purpose vehicles that help banks and their clients move assets off their balance sheets. The structure helps guard against banks' having to account for certain assets or reimburse investors if a vehicle runs into difficulty.



International tax advisers are increasingly promoting stichtings to wealthy clients as a way to disguise ownership and avoid taxes, according to private wealth consultants. One appeal is that assets can be handed down for generations without paying inheritance taxes. Stichtings used for investments or to hold company shares rarely pay any tax in the Netherlands. Dividends from stichtingsare typically taxed in the recipient's home country, like other investment income.

The vehicles are sometimes used in an attempt to blunt the impact of international sanctions.

Russian billionaire Mikhail Fridman recently was trying to get approval for the acquisition earlier this year by his investment fund, LetterOne Holdings SA, of stakes in 13 North Sea gas fields. Public documents show LetterOne proposed having a stichting assume ownership of the U.K. energy assets in case Mr. Fridman was added to the list of sanctioned Russian oligarchs. The stichting plan was an effort to assuage concerns that the U.K.'s natural-gas production could be disrupted if LetterOne's assets were frozen.

The plan relied on another common function of stichtings: Temporarily separating a company's legal ownership from the company's financial owners.

Stichtings can exist for generations or for just a few months. The board of the stichting can have the power to determine when it is no longer necessary, dissolving itself and, in some cases, allowing the assets or proceeds to return to the original owners.

This week, the U.K.'s Secretary of State for Energy, Ed Davey, rejected LetterOne's plan, and gave the company three months to sell the gas fields. Among Mr. Davey's reasons: The use of the stichting could be seen as an attempt to circumvent sanctions, according to a letter released by LetterOne.

A stichting had been used for a similar purpose in the Netherlands to keep Libya's Dutch oil arm, Oilinvest, operating when former dictator Moammar Gadhafi was overthrown in 2011. Being owned by a stichting put Oilinvest beyond the reach of international sanctions that froze the assets of its Libyan shareholders.

Managers of former Russian oil giant Yukos Oil Co. were able to shield billions of dollars in cash and international assets of Yukos from the Russian government by using two Dutch stichtings. The foundations, which continue to hold those assets on behalf of Yukos shareholders, have played a central role in a decade-long legal battle between Yukos and the Russian government.

A spokeswoman for the foundations said their creation was necessary to provide legal protections and preserve assets for shareholders. The Russian government didn't respond to a request for comment. In court documents, it alleged that the stichtings were illegally created to place assets beyond the reach of the Russian tax authorities.

*—Selina Williams contributed to this article.*

Write to Shayndi Raice at shayndi.raice@wsj.com and Margot Patrick at margot.patrick@wsj.com

Corrections & Amplifications:

Mylan NV acquired a non-U.S. drug business from Abbott Laboratories. An earlier version of this article incorrectly stated that Mylan acquired Abbott.

Copyright 2014 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com.