USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/29/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
YUKOS CAPITAL S.A.R.L., et al.,

                Plaintiffs,

        -against-                              15-cv-4964 (LAK)

DANIEL CALEB FELDMAN,

                Defendant-Third Party Plaintiff,

        -against-

DAVID GODFREY, et al.,

                Third-Party Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

            Mary E. Flynn
            MORRISON COHEN LLP
            *Attorney for Plaintiffs*

            Rishi Bhandari
            MANDEL BHANDARI LLP
            *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This case arises out of the forced break up of the Yukos Group ("Yukos Oil"), which at one point was among the largest and wealthiest privately held corporate groups in the Russian Federation and that nation's largest exporter of crude oil. The matter is before the Court on

2

plaintiffs' motion for a preliminary injunction restraining defendant Daniel Feldman from revealing information regarding plaintiffs' litigation strategy, legal advice, asset protection, or asset location that he may have learned while serving in various officer and director positions at the plaintiff entities.

*Facts*

This case's full back story is long, complicated, and much disputed.[1] For present purposes, it suffices to say only the following.

*The Break Up of Yukos Oil*

In 2006, Yukos Oil was forced into bankruptcy due to various taxes, fees, and penalties imposed by the Russian government – penalties which, in the view of Yukos Oil, were wrongful. A receiver was appointed for the assets of Yukos Oil. He sold many of these to a Russian company, OOO Promnefstroy ("Promnefstroy")[2] and others to a Russian state-owned entity, Rosneft.[3] Among the assets at issue were a wholly-owned Dutch subsidiary, Yukos Finance B.V. ("Yukos B.V."), which the receiver purported to sell to Promnefstroy, and Yukos CIS ("CIS"), which the receiver purported to sell to Rosneft. The sale of Yukos B.V. to Promnefstroy was challenged in the Netherlands and has been the subject of litigation there since 2007.

---

[1] *See, e.g., Yukos Capital Sarl v. OJSC Rosneft Oil Co.*, [2012] EWCA Civ. 855 (C.A.).

[2] Am. Compl. ¶ 19; Answer ¶ 19.

[3] Am. Compl. ¶ 21; Answer ¶ 21.

The plaintiffs in this case are direct or indirect subsidiaries of Yukos B.V. and CIS as well as foundations and a trust established to protect assets of one or more of the corporate plaintiffs. They here sue Daniel Feldman, who from approximately 2007 to 2014 was a director of several of the plaintiff entities and previously had been employed by the now-defunct Yukos Oil. Plaintiffs claim that Feldman breached his fiduciary duties to them by, *inter alia*, misappropriating monies for personal gain and disclosing confidential information to plaintiffs' adversary, Promnefstroy.

*The Current Dispute*

Plaintiffs' chief allegation relevant to the present question is that Feldman possesses information belonging to the plaintiffs which he has both contractual and fiduciary duties to keep confidential. Despite that, plaintiffs allege, Feldman has leaked and will continue to leak damaging information to plaintiffs' litigation adversaries in the Netherlands, Promnefstroy and its related entities.

Feldman served in various capacities for various Yukos entities over the approximately eleven years in which he had a relationship with the company. He was hired initially in 2003 to be the corporate secretary of Yukos Oil.[4] Following the break up of Yukos Oil, he was a director of Yukos Hydrocarbons, Yukos Capital, and Luxtona Limited.[5] He served also as a secretary to Stichting Administratiekantoor Yukos International and Stichting Administratiekantoor

---

[4] Transcript of Evidentiary Hearing ("Tr."), Feb. 9, 2016, DI 138, at 82:5–12.

[5] Tr. 83:7–9, 85:4–6, 85:17–18.

4

Financial Performance Holdings (the "Stichtings" or "Foundations").[6] Over a six-month period in 2013-14, Feldman was asked to resign from a number of these positions and ultimately was terminated from all of them.[7]

In October 2014, plaintiffs and Feldman, the latter through his counsel Marc Freiberger, attempted to negotiate a settlement agreement. Plaintiffs offered to indemnify Feldman in several then-pending lawsuits and pay him $375,000, representing nine months' salary and, contingent on successful resolution of those lawsuits, a bonus of $1 million.[8] Feldman countered by seeking an up-front payment of $2,837,500, representing five years' salary, and a bonus of the larger of $5 million or 20 percent of any amount distributed to David Godfrey.[9] Having apparently gotten no response to this counteroffer, Feldman's attorney emailed plaintiffs' counsel approximately three weeks later, on November 17, 2014. He told them that, financially, Feldman could not continue to wait and Feldman "will have no choice but to understand Yukos is not serious about reaching a resolution with him and move forward by testing his value in the job market" if plaintiffs' failed to respond by November 19.[10] No agreement was reached.

---

[6] Tr. 86:5–7.

[7] Tr. 11, 99-100.

[8] PX 36 ¶ 1.

[9] Id.

[10] PX 35.

Plaintiffs make much of this statement, casting it as a threat to "cause the Yukos Group harm." DI 72 at 7. Though not an unreasonable interpretation based on the apparent animus between the parties, based on the evidence available, however, the Court declines to so construe this statement at this time.

5

In July 2015, Feldman signed an agreement with OOO Promnefstroy, VR Capital Group Limited, and VR Global Partners, LP.[11] Promnefstroy there agreed not to pursue any legal action against Feldman for his conduct related to Yukos and to pay for Feldman's defense in this case.[12] In exchange for this largesse, Feldman agreed to "cooperate fully with [Promnefstroy] by providing complete and truthful information regarding his role and actions related to the Various Yukos Entities" except when "prohibited from doing so by any legal, contractual, fiduciary, and/or confidentiality obligation."[13] Feldman agreed also to be represented by Bailey & Glasser LLP ("BG"), waiving potential conflicts of interest unless and until the divergence of the parties interests was "significant" and presented an "actual conflict of interest."[14] In addition, with the exception of material marked by Feldman or his counsel as "Attorney Eyes Only," the agreement authorized BG to share with Promnefstroy any material provided by Feldman.[15]

On September 14, 2015, plaintiffs served Feldman, through BG, with document requests seeking, *inter alia*, all documents concerning Feldman's various roles with the plaintiff entities.[16] On October 20, 2015 – after the 30-day deadline for a response to the discovery requests

---

[11] PX 39.

[12] PX 39 ¶¶ 1, 3. During the hearing, Feldman's counsel made the remarkable admission that "[f]rom Promnefstroy's position, having this litigation go forward, regardless of the outcome, regardless of what happens, that's a positive." Tr. 201: 12–14.

[13] PX 39 ¶ 2.

[14] PX 39 ¶ 14.

[15] *Id.*

[16] DX 4.

6

– plaintiffs moved to disqualify BG from representing Feldman because of the alleged conflicts inherent in its representations of both Feldman and Promnefstroy and the attendant appearance of impropriety.[17] The next day, they brought an order to show cause for a temporary restraining order ("TRO"),[18] citing as the precipitating factor that Promnefstroy had filed allegedly confidential Yukos entity board of directors meeting minutes – to which it should not have had access – in one of the Dutch actions.[19]

The Court entered a TRO on October 21, 2015, enjoining Feldman, in relevant part, from "disclosing to third parties (including OOO Promnefstroy and its agents and conduits) any information concerning plaintiffs' litigation strategy, legal advice, or asset protection and/or location."[20] On the parties' consent, the Court extended the TRO to and including the hearing and determination of plaintiffs' motion for preliminary injunction.[21] The Court held an evidentiary hearing on February 9, 2016 during which it heard testimony from Feldman and David Godfrey, a principal of several of the plaintiff entities.

---

[17] DI 54.

[18] DI 60.

[19] DI 72.

[20] DI 60; DI 118.

[21] DI 85.

*Discussion*

"A party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; and (3) 'that a preliminary injunction is in the public interest.'"[22]

The indispensable prerequisite to preliminary injunctive relief thus is a threat of irreparable injury.[23] Moreover, the requisite threat must be something more than an unfounded, speculative fear. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown."[24] This follows from the fact that a preliminary injunction is intended to maintain the status quo until the dispute can be fully litigated,[25] thus "preserv[ing] the court's power to render a meaningful decision after a trial on the merits."[26]

For present purposes, the Court assumes without deciding that Feldman was the source of the leaked board meeting minutes and that he provided documents and information

---

[22] *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks omitted)).

[23] *E.g.*, *Hyde v. KLS Prof'l Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012); *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

[24] WRIGHT & MILLER, 11A FEDERAL PRACTICE & PROCEDURE CIVIL § 2948.1 (3d ed.).

[25] 13 MOORE'S FEDERAL PRACTICE § 65.20.

[26] *Id.* § 2947.

containing confidential information to attorneys at BG, who in turn provided them to Promnefstroy.[27] But even on these assumptions, plaintiffs have not shown a likelihood of irreparable harm because plaintiffs have not presented persuasive evidence that Feldman now possesses any additional confidential information that he (a) has not yet disclosed to plaintiffs' adversaries, and (b) likely would disclose unless a preliminary injunction issues, let alone that (c) any such additional disclosure would harm plaintiffs. That is to say, there is no reason to believe that locking the barn door now would do any good because one horse, the Court assumes, already has gone, and there is no evidence that any others remain.

Plaintiffs' efforts to deal with this situation are unconvincing. They express concern, for example, that Feldman knows the location of Yukos entity bank accounts. Feldman points out, reasonably, that plaintiffs have had ample time since his termination in 2014 to open new accounts or switch banks if this were a genuine concern.[28]

Plaintiffs come closest to demonstrating a threat of harm by pointing to the some of the litigation strategy material found in Feldman's documents. Plaintiffs highlight, for example, two memoranda from counsel that discussed the strategy for deposing Doug Miller, an auditor with

---

[27] The Court makes no findings at this time on whether Feldman in fact did leak confidential information to Promnefstroy, nor on whether any such leaks caused compensable harm to plaintiffs.

[28] The Court is not persuaded by Godfrey's testimony that Yukos entities have a difficult time opening new accounts. *E.g.*, Tr. 167:2–23. While the Court does not doubt that the nature of the enterprise may make it more challenging to do so, none of the evidence suggests that it is impossible. What is more, plaintiffs produced no evidence that they even attempted to change bank accounts in response to Feldman's termination, suggesting that his knowledge of Yukos's bank account locations was not a serious concern.

Pricewaterhouse Coopers, and the implications of the deposition once it had taken place.[29] The deposition centered on whether Yukos's use of any tax benefits had been inappropriate, as alleged by the Russian government. This subject is disputed in pending litigation because it sheds light on whether the forced break up of Yukos was valid.[30] Plaintiffs have not articulated exactly how this type of material might harm them, but, in this instance, the Court assumes that plaintiffs might have been, and conceivably could be, harmed by the leak of internal memoranda containing legal advice and analysis of issues that are still in litigation. The difficulty, however, is that plaintiffs have offered no evidence to suggest that the harm has not occurred already. Any preliminary injunction therefore would rest on pure speculation.

Plaintiffs rely on an array of evidence that leads, they claim, to the conclusion that Feldman has leaked information to Promnefstroy. Among these pieces of evidence are, *inter alia*, the fact that Feldman terminated his negotiations with plaintiffs after they refused to give him a $5 million severance payment, the cooperation agreement Feldman signed with Promnefstroy in July of 2015, that Feldman and Promnefstroy were represented by the same law firm, Promnefstroy's filing in the Netherlands litigation of Yukos board of directors meeting minutes that, allegedly, are confidential and could have been leaked only by Feldman, and that the documents produced already by Feldman contain allegedly sensitive litigation strategy and legal advice.

---

[29] PX 26; PX 30.

[30] Tr. 127:15–128:4. The Court notes that the memoranda were written in the context of litigation between Yukos and Rosneft, not Promnefstroy, which has since settled. However, the Court credits Godfrey's testimony that the subject matter and litigation strategies surrounding that deposition remain relevant.

10

And indeed, plaintiffs may be correct inasmuch as this evidence ultimately may prove that Feldman did provide Promnefstroy with confidential Yukos information. But it does not support a conclusion such harm is threatened at this time and can be prevented only with a preliminary injunction. Feldman ceased negotiations with Yukos in November 2014 and signed the cooperation agreement with Promnefstroy on July 10, 2015, in which he agreed to be represented by BG.[31] Plaintiffs did not file their motion to disqualify BG until October 20, 2015.[32] Feldman was represented by BG until December 15, 2015.[33] Even if Feldman provided no cooperation to Promnefstroy prior to signing the cooperation agreement – an unlikely scenario if plaintiffs' allegations prove true – the period of five months between its signing and BG's withdrawal is more than sufficient for Feldman to have provided any and all information he possessed to Promnefstroy, either directly through BG. Plaintiffs have offered no evidence to suggest that Feldman would have doled out his confidential information in limited quantities to BG rather than giving it access to everything from the start. Indeed, Feldman testified that, in order to respond to plaintiffs' discovery requests, he gave his email password and full access to all of his Yukos-related documents and files to a discovery vendor retained by BG.[34] And Godfrey testified that, in fact, this is exactly what he expected to happen after plaintiffs served their discovery requests.[35]

---

[31] PX 39.

[32] DI 54.

[33] DI 102.

[34] Tr. 110:23–111:8.

[35] Tr. 138:8–15. Godfrey was asked, "Did you expect Daniel Feldman to provide Bailey & Glasser with the documents necessary to respond to the discovery requests that the Yukos

*Conclusion*

In sum, plaintiffs failed to show that there is a likelihood of irreparable harm that would be prevented by a preliminary injunction. Accordingly, the TRO is terminated, and plaintiffs' motion for a preliminary injunction is denied.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated:     August 29, 2016

/s/   Lewis A. Kaplan
_____
Lewis A. Kaplan
United States District Judge

---

entities served on Bailey & Glasser?" He answered, "Did I expect him to do so? Yes."