UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
YUKOS CAPITAL S.A.R.L., et al.,

                    Plaintiffs,

           -against-

DANIEL CALEB FELDMAN,                           15-cv-4964 (LAK)

                 Defendant-Third Party Plaintiff,

           -against-

DAVID GODFREY, et al.,

                 Third-Party Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/14/2016

## MEMORANDUM OPINION

Appearances:

> Mary E. Flynn
> MORRISON COHEN LLP
> *Attorney for Plaintiffs*

> Rishi Bhandari
> MANDEL BHANDARI LLP
> *Attorney for Defendants*

LEWIS A. KAPLAN, *District Judge*.

      This case arises out of the forced break up of the Yukos Group ("Yukos Oil"), which at one point was among the largest and wealthiest privately held corporate groups in the Russian Federation and that nation's largest exporter of crude oil. The matter is before the Court on

plaintiffs' and third-party defendants' motion to dismiss defendant Daniel Feldman's amended counterclaims.

*Facts*

The Court assumes familiarity with its opinion denying plaintiffs' motion for a preliminary injunction for a fuller discussion of the history of this case.[1] For present purposes, the Court will discuss only the background necessary for this motion.

Defendant Daniel Feldman asserts several counterclaims against the plaintiffs and third-party claims against individuals who serve as outside counsel to directors or employees of or outside counsel to various plaintiff entities.[2] In broad strokes, he accuses plaintiffs and third-party defendants of, *inter alia*, myriad instances of severely mismanaging of Yukos assets and using those

---

[1]  *Yukos Capital S.A.R.L. v. Feldman*, No. 15-cv-4964 (LAK), 2016 WL 4532198 (S.D.N.Y. Aug. 29, 2016).

[2]  Although the motion to dismiss was filed initially in regard to DI 124, Feldman's Amended Counterclaim, Feldman subsequently filed Second Amended Counterclaims, DI 148.  The parties then agreed that "[t]he motion to dismiss filed on February 16, 2016 [DI 130] and all supporting and opposing documents filed in connection thereto, shall hereby apply to the claims set forth in the Second Amended Counterclaims and Third-party Complaint filed on March 24, 2016 [DI 148]."  DI 153.  For the sake of consistency, the Court cites only to DI 148.

assets for personal gain.  He alleges that the director defendants,[3] through the Foundations, he alleges:

> "have unaccountable access to a vast fortune in Yukos Group assets.  With no
> shareholders to answer to and no oversight of any kind, the Director Defendants have
> repeatedly used their positions for their personal benefit.  Ignoring former Yukos Oil
> policies and basic corporate ethics, they have paid themselves extraordinary bonuses
> and obtained reimbursement for outrageously extravagant personal expenses.  The
> Director Defendants force the Foundations to spend more than $50 million each year
> to maintain their control and to support their opulent lifestyle."[4]

Feldman alleges that the breakdown in his relationship with plaintiffs occurred when

he discovered a secret agreement by which the directors approved a scheme to bypass other creditors

and stakeholders in favor GML, the majority shareholder of the former Yukos Oil, in exchange for

"$26 million in kick-backs."[5]  He claims his "relationship with the Director Defendants was

shattered because he objected to this allegedly "lawless and corrupt breach of [the directors'] duties

to the Yukos Group,"[6] The Director Defendants allegedly began making plans to eliminate him from

the Yukos Group and punish him for his perceived disloyalty."[7]  Feldman alleges two specific

wrongs here.

---

[3]

It is worth clarifying the several terms the Court will employ throughout this opinion to
refer to the various parties. "Plaintiffs" refers to the Yukos Group business entities which
are plaintiffs in the underlying matter and here are the counterclaim defendants. "Third-
party defendants" refers collectively to all of the individuals named as defendants to
Feldman's third-party claims. Feldman uses also the term "Individual Defendants" to refer
to the third-party defendants. "Director defendants" refers to the subset of third-party
defendants who are or were directors of the plaintiff entities.

[4]

DI 148 ¶ 40.

[5]

DI 148 ¶¶ 74, 80.

[6]

DI 148 ¶ 82.

[7]

DI 148 ¶ 83.

4

First, Feldman alleges that plaintiffs and third-party defendants wrongfully accessed and downloaded his email.  In May 2014, as part of an effort to preserve historical data, plaintiffs retained Crowe Horwath, a computer forensics firm.[8]  Feldman agreed that Crowe Horwath could collect his email for the period of time during which he served as a director of one of the plaintiff entities, YHIL.  Feldman alleges that he instructed Crowe Horwath's employee, Tim Bryan, not to collect any email that post-dated his termination in September 2012.[9]  Despite that, Feldman alleges, Crowe Horwath, "at the direction of the Individual Defendants, told Feldman via email that it would not abide by his restrictions and would access his personal email to whatever extent it deemed appropriate" and in fact did so.[10]

Feldman alleges also that Yukos directors and outside counsel and defamed Feldman to various audiences on numerous occasions between March and November of 2015.[11]  These will be detailed more specifically below.[12]

The Court dismissed Feldman's original counterclaims and third-party claims with leave to replead by orders dated January 7, 2016.[13]  Feldman filed amended counterclaims and third-

---

[8]     DI 148 ¶ 84.

[9]
        DI 148 ¶¶ 85-86.

[10]
        DI 148 ¶¶ 90-91.

[11]
        DI 148 ¶ 134.

[12]
        See infra § III.

[13]
        DI 115 (corrected DI 119); DI 116.

party claims on January 28, 2016,[14] and plaintiffs and third-party defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[15]

*Discussion*

I.  *Legal Standard*

"On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive."[16] But a plaintiff nevertheless must plead facts sufficient "to state a claim to relief that is plausible on its face."[17] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] In addition to the facts alleged in the complaint, the Court may consider also any documents relied upon by the plaintiff in bringing the suit.[19]

---

[14]

DI 124.

[15]

DI 130.

[16]

*Doe v. Columbia Univ.*, __ F.3d __, No. 15-1536, 2016 WL 4056034, at *1 (2d Cir. July 29, 2016).

[17]

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[18]

*Aschroft v. Iqbal*, 556 U.S. 662 (2009).

[19]

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").

6

*II.     Feldman's Stored Communications Act Claims*

Feldman alleges that Crowe Horwath's access and use of his post-September 2012 emails violated the Stored Communications Act ("SCA")[20] which prohibits "(1) intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[ing] an authorization to access that facility[,] and thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage."[21]

Plaintiffs argue first that Feldman cannot raise this claim against them, as distinguished from the third-party defendants, because it exceeds the scope of the permission the Court gave Feldman to replead his earlier dismissed counterclaims. In Feldman's original answer, the only counterclaims brought against plaintiffs were for slander, libel, breach of contract, and declaratory judgment.[22] The Court dismissed three of the four counts but gave Feldman permission to "replead[] those counterclaims *and nothing else*."[23] Plaintiffs therefore are correct that Feldman exceeded the scope of the Court's order allowing him to replead his counterclaims. The claim for

---

20

    18 U.S.C. § 2701 *et seq.*

    With some exceptions not relevant here, the statute provides a private cause of action to "any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind." 18 U.S.C. § 2707(a).

21

    18 U.S.C. § 2701(a).

22

    DI 9 ¶¶ 134-161.

23

    DI 119 at 5.

7

breach of the SCA as to plaintiffs therefore is dismissed.[24]

Plaintiffs argue also that the SCA claim exceeded the scope of the Court's permission to replead the third-party claims against the individual third-party defendants. In his original third-party complaint, however, Feldman included a claim under the Computer Fraud and Abuse Act, alleging that third-party defendants "misappropriated Feldman's personal emails from his private accounts, misappropriated emails dated later than September 12, 2012, and, upon information and belief, illegally accessed his cell phone, telephone, and other electronic needs."[25] The conduct that Feldman now alleges violated the SCA is the same as that previously alleged. Accordingly, the SCA claim against the third-party defendants does not exceed the scope of permission granted to replead as against them.[26]

Nevertheless, this claim falls short on the merits. Crowe Howath is not a party to this case. Rather, Feldman's theory is that the third-party defendants are liable under the SCA because Crowe Horwath was their agent and that Crowe Horwath's alleged actions therefore are imputed to them. And while the parties have devoted spirited argument to the questions whether Feldman's theory is one of secondary rather than primary liability and, if so, whether the SCA contemplates

---

[24] Indeed, Feldman appears to have conceded this point. His memorandum in opposition does not argue that the SCA claim falls within the scope of the claims brought against plaintiffs originally. Instead, he confuses the Court's dismissal of his counterclaims with its dismissal of his third party complaint, apparently arguing that the Court's grant of permission "to attempt to bring different state or federal law claims (i.e., claims not based on the [Computer Fraud and Abuse Act]) based on the same conduct alleged in Count IV," DI 116, of the third-party complaint gave him permission to bring those claims against plaintiffs also. *See* Def.'s Mem., DI 145, 4-7. However, the Court did no such thing.

[25] DI 9 ¶ 190.

[26] *See* DI 116.

8

secondary liability, the Court need not address that question because Feldman has not sufficiently alleged an agency relationship between the third party defendants and Crowe Horwath.

"An agency relationship exists under New York law when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent.   The element of control often is deemed the essential characteristic of the principal-agent relationship."[27]

Feldman's only factual allegations tying the alleged actions of Crowe Horwath to the third-party defendants are that Godfrey informed Feldman that Crowe Horwath "had been hired to preserve certain 'historical' data related to YHIL,"[28] that "Crowe Horwath took the email messages from Feldman's account at the Individual Defendants' [i.e., the third-party defendants] explicit instruction,"[29] and that the messages "were conveyed to the Individual Defendants for use against Feldman."[30]  Lastly, Feldman refers repeatedly to Crowe Horwath as the third-party defendants'

---

[27]

> *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005) (footnotes and citations omitted); *see also In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 330 (S.D.N.Y. 2005) ("'[a] principal has the right to control the conduct of the agent with respect to matters entrusted to him.'" (quoting RESTATEMENT (SECOND) OF AGENCY § 14)). Given that neither party has contended otherwise, the Court assumes New York's law of agency applies because New York is where the allegedly unlawful access to Feldman's emails occurred. *See Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the choice of New York . . . law, all are deemed to have consented to its application.").

[28]

> DI 148 ¶ 84.

[29]

> DI 148 ¶ 93.

[30]

> DI 148 ¶ 94.

agent,[31] though without any supporting factual allegations.  But there are no specific allegations with respect to any particular third-party defendant.  "Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."[32]  Thus, even if Crowe Horwath's actions violated the SCA, Feldman failed to allege anything that could "nudge[] [his] claims" that Crowe Horwath acted as an agent of any particular third-party defendant "across the line from conceivable to plausible."[33]  Thus, Feldman's SCA claim is dismissed.

## III.   Feldman's Defamation Claims

Feldman alleges that plaintiffs and third-party defendants defamed him in nine specific statements made between March and November 2015.  These fall into two basic categories: comments made by outside counsel for the Yukos Group to Yukos employees, service providers, and in court proceedings, and comments made by third-party defendants.

Defamation is an "injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."[34]  In New York, to recover for defamation, a plaintiff

---

[31]

E.g., DI 148 ¶¶ 191, 153.

[32]

Ochre LLC v. Rockwell Architecture Planning & Design, P.C., 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), aff'd, 530 F. App'x 19 (2d Cir. 2013).

[33]

See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

[34]

Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517–18 (S.D.N.Y. 2013) (quotation omitted).

must demonstrate "'a false statement, published without privilege or authorization to a third party, ... fault . . . and . . . either [causing] special harm or [constituting] defamation per se.'"[35]

A.     *Statements Made By Outside Counsel*

Several of the allegedly defamatory statements were made by Yukos Group outside counsel after the commencement of this litigation.  Plaintiffs and third-party defendants assert that these all are protected by absolute privilege.

The law of New York for well over one hundred years has provided "absolute immunity from liability for defamation . . .  for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved.'"[36]  This broad protection often extends even to out-of-court statements although, as Judge Sack has written, "[t]here are limits."[37]  The privilege, where applicable, "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability."[38]  Moreover, the

---

[35]     *Id.* (quoting *Epifani v. Johnson*, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234 (2d Dep't 2009) (alterations in original); *see also Gaccione v. Scarpinato*, 137 A.D.3d 857, 858, 26 N.Y.S.3d 603, 605 (2d Dep't 2016).

[36]     *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015) (citing *Youmans v. Smith*, 153 N.Y. 214, 214 (1897)).

[37]     1 ROBERT D. SACK, SACK ON DEFAMATION § 8.2.1, at 8-14 to 8-17 (4th ed. 2011).  For example, statements made to the press or made after the conclusion of litigation may result in liability.  Statements made "to a person who is in no way connected with" the litigation may be actionable also.  LAURENCE H. EDREDGE, THE LAW OF DEFAMATION § 73, at 355 (1978).

[38]     *Grasso v. Mathew*, 164 A.D.2d 476, 479, 564 N.Y.S.2d 576, 578 (3d Dep't 1991); *see also El Jamal v. Weil*, 116 A.D.3d 732, 734, 986 N.Y.S.2d 146 (2d Dep't 2014) ("Generally, as

New York Court of Appeals recently extended more limited protection to counsel's pre-litigation statements, holding that there is qualified immunity for any "statements pertinent to a good faith anticipated litigation."[39]

Here, Feldman alleges that Yukos Group outside counsel Bernard O'Sullivan, Maartin Drop, and Eelco Meerdink made various statements in August, September, and October of 2015 to Yukos Group employees that "Feldman had stolen from the Yukos Group, and had been secretly under the employee of PNS during his time as a director."[40]  These alleged statements all were made after the commencement of this lawsuit and related to plaintiffs' allegations.  They therefore are protected by absolute immunity.

Feldman alleges also that "on November 6, 2015 or November 13, 2015," another Yukos lawyer, Winfried Van den Muijsenbergh, "told numerous people, including Richard Dietz, Maarten Drop, and Eelco Meerdink, that Feldman was a thief who had stolen from the Yukos Group."[41]  Again, this is an alleged statement of counsel concerning allegations made in the present

---

relevant here, statements made at all stages of a judicial proceeding in communications among the parties, witnesses, counsel, and the court are accorded an absolute privilege, so long as the statements may be considered in some way 'pertinent' to the issue in the proceeding.  This privilege, or 'immunity[,]' applies to statements made in or out of court, on or off the record, and regardless of the motive with which they were made" (citations omitted)); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) ("[I]t is . . . a well-established principle that the ruling of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940))).

[39]

*Id.* at 720.

[40]

DI 148 ¶ 134; *id.* ¶¶ 111-113.

[41]

DI 148 ¶ 134.

litigation and is subject to absolute immunity.[42]

Feldman nevertheless argues that the alleged statement to Dietz, a principal of Yukos's adversary Promnefstroy, cannot be privileged. New York, however, recognizes that, "[a]s a matter of policy, attorneys should be given maximum freedom in the quest for justice for their clients" and that "'no strained or close construction will be indulged in to exempt a case from the protection of privilege.'"[43] Yukos' counsel's discussion of the allegations against Feldman in this case, even with an adversary, were privileged.

Lastly, Feldman alleges that O'Sullivan made a statement to Ali Naini, a Yukos Group consultant, on June 18, 2015, that "Feldman had attempted to use his position on the

---

[42]

*Front, Inc.*, 24 N.Y.3d at 718 ("[R]elevant statements made in judicial or quasi-judicial proceedings are afforded absolute protection so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard. The privilege attaches to such statements irrespective of an attorney's motive for making them." (internal citations omitted)). Plaintiffs point out also that this statement by Mr. Van den Muijsenbergh was made during a court proceeding in Amsterdam, and attempt to prove this assertion by attaching an email from Feldman as an exhibit to a declaration from Jeffrey Brooks. DI 131-11. However, pursuant to Rule 12(d), the Court either must exclude this evidence or convert the motion to dismiss into one for summary judgment. The Court declines to convert this into a motion judgment, and therefore excludes the Brooks affidavit and attached exhibits. That said, however, the fact of the proceeding and what was said are matters of which the Court properly could, and will, take judicial notice. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Under Federal Rule of Evidence 201, a court may take judicial notice, at 'any stage of the proceeding,' of any fact 'that is not subject to reasonable dispute because' it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' When considering a Rule 12(b)(6) or Rule 12(c) motion, the Court may take judicial notice of certain matters of public record without converting the motion into one for summary judgment." (citations omitted)). Pursuant to Federal Rule of Evidence 201(e), Feldman is free to challenge this notice and request an opportunity to be heard. *See also* JACK B. WEINSTEIN & MARGARET A. BURGER, WEINSTEIN'S EVIDENCE MANUAL § 4.05 (2016) ("If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard. . . . It is the burden of the party opposing judicial notice to request a hearing on the matter.").

[43]

*Caplan v. Winslett*, 637 N.Y.S.2d 967, 970 (1996) (quoting (*Moore v. Manufacturers' Natl. Bank of Troy*, 123 N.Y. 420, 426 (1890)).

Intelligent Energy board to secure a personal benefit for himself" and thereafter was removed for ethical violations.[44]  Although this statement predated this litigation by a week,[45] Feldman does not allege that the litigation was not anticipated in good faith just a week before the case was commenced.  The fact that plaintiffs have alleged that Naini colluded with Feldman to divert the proceeds of a stock sale properly belonging to the Yukos Group for personal gain[46] does not alter the analysis – it is entirely proper to attempt to gather information in anticipation of litigation from potentially adverse witnesses.  Accordingly, this statement, in both its written and oral forms, is likely protected by qualified privilege.  To be sure, that conclusion is not the end of the matter, as qualified privilege may be overcome in appropriate circumstances.  As will be discussed *infra* Section III.B, Feldman will be given the chance to prove, as to this statement, that it was motivated solely by malice.

In sum, except as to the pre-litigation statement by O'Sullivan, Feldman's defamation claim as to the statements by Yukos Group outside counsel is dismissed.[47]

B.    *Statements by Third-Party Defendants*

Feldman claims also that the third-party defendants made several defamatory statements, all related to allegations that Feldman stole from Yukos and took bribes from and was

---

[44]

DI 148 ¶ 134; *id.* ¶¶ 126, 144.

[45]

This action was filed on June 25, 2015.

[46]

Am. Compl., DI 146 ¶¶ 101-112.

[47]

Plaintiffs' and third-party defendants' motion to dismiss Count II is denied because the only statement at issue there is the pre-litigation statement by O'Sullivan.

14

secretly working for Promnefstroy.[48]  Plaintiffs and third-party defendants argue that each of these statements is protected by the common interest privilege, which "extends to a communication made by one person to another upon a subject in which both have an interest" and has been applied "to employees of an organization."[49]

The policy of the common interest privilege is "that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded."[50]  The statements at issue here therefore would be actionable only if Feldman could demonstrate that they were made with malice, under either the common law or constitutional definition.[51]  Common law malice means "spite or ill will," which

> "[i]n this context, . . . refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements.  If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff.  Thus, a triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the publication.[52]

---

[48]

DI 148 ¶ 134.

[49]

*Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) (citation and quotation omitted).

[50]

*Id.*

[51]

*E.g.*, *Foster v. Churchill*, 87 N.Y.2d 744, 752 (1996) (defamation claim failed where statements were subject to common interest privilege and plaintiff failed to show defendant acted out of "personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false"); *see also Liberman*, 80 N.Y.2d at 438 ("we have recognized that the constitutional as well as the common-law standard will suffice to defeat a conditional privilege").

[52]

*Liberman*, 80 N.Y.2d at 439.

Constitutional malice is demonstrated by showing "knowledge of falsity or reckless disregard for truth or falsity."[53]

Feldman does not dispute that many, if not all, of these statements potentially are protected by this privilege. However, as the common interest privilege is qualified rather than absolute, it is subject to rebuttal with proof of malice. Feldman therefore contends that it would be improper to dismiss his claims on this basis pursuant to Rule 12(b)(6).

There is some force to Feldman's procedural argument not only with respect to the claim of common interest privilege, but also the claim with respect to the pre-suit statements to Ali Naini that were discussed in the preceding section. Qualified privilege – whether of the common interest or litigation variety – often is regarded as an affirmative defense. And, as a general matter, dismissal on a motion to dismiss on the basis of an affirmative defense is not appropriate. Nevertheless, the rule is not absolute. One example of its someone flexible contours is the principle that a case may be dismissed on the basis of the statute of limitations, which is an affirmative defense, "where the facts needed for determination . . . can be gleaned from the complaint and papers . . . integral to the complaint."[54]

Although there is a division of view within the New York courts, some Appellate Division cases have affirmed pre-answer dismissals of defamation claims on qualified privilege grounds on similar reasoning.[55] But the Second Circuit has cautioned district courts – specifically

---

[53]

      *Id.* at 434.

[54]

      *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 512 (2d Cir. 2008) (internal quotation marks and citations omitted).

[55]

      *Compare Hanlin v. Sternlicht*, 6 A.D.3d 334, 775 N.Y.S.2d 146 (2004) (affirming dismissal of defamation claim on motion to dismiss where "[p]laintiff's allegations that defendant

in the context of deciding qualified privilege in defamation cases – that "[i]t is important to recognize the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment."[56]  It went on to hold that in a defamation claim against a private figure, "a plaintiff may allege facts suggestive enough to warrant discovery, even where those facts alone would not establish a cause of action for defamation."[57]  Similarly, the New York Court of Appeals case to most squarely address the propriety of dismissing a defamation claim on the grounds of qualified privilege on a motion to dismiss held that plaintiff should have the opportunity to prove through discover that "malice was the one and only cause" for the statement even though doing so "might be well-nigh impossible."[58]

---

made the offending statements in order to get her job rest only on surmise and conjecture, not evidentiary facts"), *with Demas v. Levitsky*, 291 A.D.2d 653, 661, 738 N.Y.S.2d 402, 410 (3d Dep't 2002) ("Because the 'common interest' privilege constitutes an affirmative defense however, it does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211(a)."), *and Giuffre v. Maxwell*, No. 15 CIV. 7433 (RWS), 2016 WL 831949, at *6 (S.D.N.Y. Feb. 29, 2016) ("The affirmative privilege defenses are therefore not appropriate for resolution on a motion to dismiss."). Indeed, the New York Court of Appeals, in at least one instance, also affirmed dismissal on a motion to dismiss on the basis of qualified privilege. *Front, Inc.*, 24 N.Y.3d at 720.

[56]

*Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)) (alterations in original).

[57]

*Id.* (citing *Stukuls v. State*, 42 N.Y.2d 272 (1977)). The Court is aware of the more recent case, *Biro v. Conde Nast*, which held that "[t]o the extent that [plaintiff] reads *Boyd* as permitting an implausible claim to proceed to discovery, we think *Twombly* rejected this approach." 807 F.3d 541, 546 (2d Cir. 2015). This case, however, dealt with defamation of a public figure, in which the plaintiff clearly has the burden at the pleading stage to allege facts demonstrating that the speaker made the statement with knowledge or reckless disregard to its falsity. *Biro* did not explicitly overrule or abrogate *Boyd* as to defamation claims against private figures, where malice is not necessarily an element of the claim, nor did it address a plaintiff's burden in a private-figure defamation claim to plead lack of privilege. *Biro* is therefore not applicable here.

[58]

*Stulkus*, 42 N.Y.2d at 281.

Thus, the best approach here is to impose some minimal burden on Feldman to plead "facts suggestive enough to warrant discovery."[59]   Because Feldman does not contest that the allegedly defamatory statements made by Godfrey, Fleischman, or Theede were made to Yukos employees, directors, outside counsel, or contractors with a common interest in the various litigation in which the Yukos Group is engaged,[60] the question is whether he has alleged plausibly that the statements were made with malice.  Taken as true, Feldman's allegations that he confronted third-party defendants about their alleged self-dealing and unethical self-enrichment support an inference that some within the Yukos organization may indeed harbor malice towards Feldman.  Although Feldman has alleged facts that, alone, would not defeat qualified privilege, they are "suggestive enough to warrant discovery."[61]

Of course, this issue is likely to be revisited on summary judgment or at trial.  It may be difficult for Feldman to adduce evidence sufficient to prove that the *sole* motivating purpose for these allegedly defamatory statements was spite or ill will.  The allegedly defamatory statements relate to the plaintiffs' allegations in the underlying suit, and in consequence would be a reasonable topic of conversation for business associates.  Nor, to date, has Feldman made any motion or otherwise alleged that the underlying suit was brought in violation of Rule 11(b).[62]

---

[59]          *Boyd*, 208 F.3d at 410; *see also Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (recognizing that many formulations of the elements of defamation require a plaintiff plead that the statement was made "without privilege").

[60]          Specifically, these are the third through the sixth statements in ¶ 134 of the Amended Answer, DI 148.

[61]          *See Boyd*, 208 F.3d at 410.

[62]          *See, e.g.*, FED. R. CIV. P. 11(b)(1) (requiring that any pleading "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

For now, however, as to the alleged statements by Fleischman, Godfrey, and Theede, plaintiffs' and third-party defendants' motion to dismiss is denied.[63]

---

cost of litigation").

[63]

This claim is dismissed as to third-party defendants Guillenchmidt and King, however, as Feldman has alleged no personal involvement in the purported wrongdoing nor any plausible theory to circumvent the usual rule that corporate directors are not personally liable unless they acted in bad faith or personally committed the tortious act. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993) (under New York law, "director is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort in connection with the performance of the contract"); *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 49, 948 N.Y.S.2d 263, 267 (1st Dep't 2012) ("a corporate officer who participates in the commission of a tort may be held individually liable" (quotations omitted)).

*Conclusion*

For the foregoing reasons, plaintiffs' and third-party defendants' motion to dismiss Feldman's amended counterclaims [DI 130] is GRANTED to the extent that Count I is dismissed as to the statements made by O'Sullivan, Meerdink, Drop, and van den Muijsenbergh after the commencement of this litigation and as to defendants Guillenchmidt and King, and Count III is dismissed, and DENIED in all other respects. The dismissal of Count III with respect to third-party defendants is without prejudice to the filing, on or before September 28, 2016, of an amended answer repleading the SCA claim to attempt to cure the failure to allege specific facts as to each third-party defendant to make out a plausible claim that Crowe Horwath acted in relevant part as an agent of each, and nothing else.


SO ORDERED.

Dated:          September 14, 2016

_____

Lewis A. Kaplan
United States District Judge