UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YUKOS CAPITAL SARL, YUKOS
HYDROCARBONS INVESTMENTS LIMITED,
STICHTING ADMINISTRATIEKANTOOR
YUKOS INTERNATIONAL, STICHTING
ADMINISTRATIEKANTOOR FINANCIAL
PERFORMANCE HOLDINGS, LUXTONA
LIMITED and MARC FLEISCHMAN, TRUSTEE
OF THE 2015 SECURITY TRUST, as successor in
interest to the 2004 SECURITY TRUST,

     Plaintiffs,

  -against-

DANIEL CALEB FELDMAN,

     Defendant.

Case No. 15-4964-LAK

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR RELIEF FROM THE JUDGMENT

Jeffrey D. Brooks
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 6

I.   Feldman's "Motion" Should Be Stricken Because
     It Does Not Comply with this Court's Rules ..................................................... 6

II.  Feldman Has Misled the Court about the United States Attorney's Office's
     Alleged Verification of His Factual Allegations ............................................... 8

III. Feldman Is Not Entitled to Relief under Fed. R. Civ. P. 60(b) ......................... 9

     A.   Feldman's Motion Is Barred by the Time Limitation in Fed. R. Civ. P 60(c)(1). ...... 9

     B.   There Is No Evidence that Plaintiffs Were Involved in the Alleged Hacking of
          Feldman's Emails or that Plaintiffs Had Any Access to His Attorney-Client
          Communications. ..................................................................................... 12

     C.   Feldman Has Not Suffered Any "Undue Hardship" .................................. 19

CONCLUSION ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brannon v. Delta Airlines, Inc.*,
  434 F. Supp. 3d 124 (S.D.N.Y. 2020).......................................................................8

*Circuito Cerrado, Inc. v. LV Foods*,
  296 F.R.D. 122 (E.D.N.Y. 2013) ...........................................................................13

*Colorado v. New Mexico*,
  467 U.S. 310, 104 S. Ct. 2433 (1984).....................................................................13

*Matter of Emergency Beacon Corp.*,
  666 F.2d 754 (2d Cir. 1981)....................................................................................11

*Encarnacion v. Olivo*,
  2024 WL 4651770 (N.D.N.Y. Nov. 1, 2024) .........................................................11

*Fleming v. New York Univ.*,
  865 F.2d 478 (2d Cir. 1989).....................................................................................13

*Geo-Grp. Commc'ns, Inc. v. Chopra*,
  2023 WL 6235160 (S.D.N.Y. Sept. 26, 2023).........................................................10

*Griffin v. Swim-Tech Corp.*,
  722 F.2d 677 (11th Cir. 1984) .................................................................................10

*Horphag Research Ltd. v. Henkel Corp.*,
  2004 WL 117601 (S.D.N.Y. Jan. 26, 2004) ...........................................................11

*House v. Sec. of Health & Hum. Serv.*,
  688 F.2d 7 (2d Cir. 1982).....................................................................................9, 10

*Jeanty v. City of Utica*,
  2024 WL 4429417 (2d Cir. Oct. 7, 2024).................................................................11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  13 F.4th 247 (2d Cir. 2021) .....................................................................................13

*Maduakolam v. Columbia University*,
  866 F.2d 53 (2d Cir. 1989)........................................................................................11

*Martha Graham Sch. & Dance Found, Inc. v. Martha Graham Ctr. of Contemp.*
  *Dance, Inc.*, 466 F.3d 97 (2d Cir. 2006) .................................................................12

i

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
    970 F.3d 133, 143 (2d Cir. 2020) ..........................................................19

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)...........................................................10, 11, 19

*Perez v. U.S. Immigration & Customs Enf't*,
    2020 WL 4557387 (S.D.N.Y. Aug. 6, 2020) ...........................................8

*Simon v. United States*,
    2020 WL 832887 (S.D.N.Y. Feb. 20, 2020) ...........................................10

*Stevens v. Miller*,
    676 F.3d 62 (2d Cir. 2012)......................................................................11

*Tracy v. Freshwater*,
    623 F.3d 90 (2d Cir. 2010).........................................................................8

*Traguth v. Zuck*,
    710 F.2d 90 (2d Cir. 1983).........................................................................8

*Transaero, Inc. v. La Fuerza Area Boliviana*,
    24 F.3d 457 (2d Cir. 1994) ......................................................................12

*Truskoski v. ESPN, Inc.*,
    60 F.3d 74 (2d Cir. 1995)........................................................................12

*Wang v. Int'l Bus. Machines Corp.*,
    839 F. App'x 643 (2d Cir. 2021) ............................................................12

## Other Authorities

Fed. R. Civ. P. 60(b) ...................................................................... *passim*

12 MOORE'S FEDERAL PRACTICE § 60.48(3)(c) .................................12

Webster's II New College Dictionary..........................................................7

Plaintiffs,[1] through their attorneys Morrison Cohen LLP, hereby respectfully submit this memorandum of law in opposition to the motion of Defendant Daniel Feldman ("Feldman") for relief from the judgment pursuant to Fed. R. Civ. P. 60(b).

## PRELIMINARY STATEMENT

Defendant Daniel Feldman is a liar and a thief. Six years ago, following a three-week jury trial, Feldman was held liable for two breaches of the fiduciary duties he owed to Plaintiffs. The first breach related to an incident where Feldman withdrew funds from a trust as to which he was the trustee and invested them in his own name. The second breach related to the "Julius Baer Scheme," a fraudulent-kickback scheme pursuant to which Feldman and an accomplice embezzled more than $2.6 million from the Yukos Group in the form of illicit kickbacks from Swiss bank Julius Baer & Co. Ltd. ("Julius Baer"). Before the Julius Baer Scheme came to light, Feldman had actively concealed the existence of the scheme, including by lying in his sworn deposition testimony in this action. Following the jury verdict, the Court entered a Judgment against Feldman on March 26, 2019 (the "Judgment"). Feldman appealed the Judgment, but in 2020, the U.S. Court of Appeals for the Second Circuit substantially affirmed the Judgment.

That was the end of this action, and that should remain the end. Feldman, however, is not the kind of person who takes personal responsibility for his own actions. Thus, more than six years after the Judgment was entered, Feldman has now filed a sprawling, outrageous, and defamatory motion seeking to set aside the Judgment. Feldman's meritless motion is premised on his

---

[1] The original Plaintiffs in this action were Yukos Capital S.A.R.L., Yukos Hydrocarbons Investments Limited, Stichting Administratiekantoor Yukos International, Stichting Administratiekantoor Financial Performance Holdings, Luxtona Limited and Marc Fleischman, as trustee of the 2015 Security Trust, as successor in interest to the 2004 Security Trust (the "Trustee" and the "Trust"). In the years since this litigation ended, Plaintiff Yukos Capital S.A.R.L. was redomiciled in the BVI as Yukos Capital Limited, now a BVI company. Plaintiff Yukos Hydrocarbons Investments Limited was merged into Yukos Capital Limited. Plaintiff Stichting Administratiekantoor Yukos International was merged into Plaintiff Stichting Administratiekantoor Financial Performance Holdings. And Plaintiff Luxtona Limited was dissolved.

erroneous contention that Plaintiffs hacked his email accounts and used his attorney-client communications against him in this litigation. But Feldman fails to provide any evidence that Plaintiffs had any involvement in any alleged hacking of Feldman's emails or that Plaintiffs ever used any of Feldman's attorney-client communications against him in this litigation. There is, of course, no truth to Feldman's defamatory speculations. Neither Plaintiffs nor anyone directly or indirectly hired by Plaintiffs ever hacked into Feldman's private email accounts. Plaintiffs have never heard of Aviram Azari, the alleged hacker, and Plaintiffs have never had any direct or indirect business relationship with him. Neither Plaintiffs nor their counsel in this action ever had access to any of Feldman's allegedly hacked emails or to any of his attorney-client communications or attorney work product. Feldman's baseless assertions otherwise are absurd and insulting lies.

In his motion papers, Feldman implies that the US Attorney's Office endorsed his allegations, but the US Attorney's Office has clarified that that is not correct. The US Attorney's Office has now clearly stated that it in no way endorses "any of the factual allegations or legal arguments" in Feldman's motion.

Feldman's motion is fatally flawed. First, Feldman's motion papers fail to comply with this Court's rules. More fundamentally, since the Judgment was entered more than six years ago, Feldman's motion has missed the one-year limitation period of Fed. R. Civ. P. 60(c)(1) by more than five years. In addition, Feldman has failed to present clear and convincing evidence of Plaintiffs' involvement in the alleged hacking of his emails. Indeed, Feldman has presented no direct evidence at all of Plaintiffs' alleged involvement in the alleged email hacking. And finally, Feldman cannot demonstrate any extreme and undue hardship arising from the Judgment.

The Judgment was just, and it should remain undisturbed.    Feldman's motion must be denied.

## STATEMENT OF FACTS

### *The Yukos Group*

Plaintiffs are entities within the "Yukos Group."  The Yukos Group controls the offshore-to-Russia assets of the former Yukos Oil Company ("Yukos Oil") that the Yukos Group rescued from illegal expropriation by the Russian State.  Yukos Oil had been Russia's largest exporter of crude oil.  (Dkt. No. 428 at 94-101).  As part of a plan to expropriate its assets, the Russian government imposed unjustified taxes, interest, and penalties upon Yukos Oil and forced it into a sham bankruptcy in 2006.  (*Id.*)

Soon after the Russian assault on Yukos Oil began, Plaintiffs and their affiliates became involved in long-running litigations in the Netherlands and elsewhere against a company named OOO Promneftstroy ("Promneftstroy"), which falsely asserted title to Yukos Group assets.  (Dkt. No. 428 at 111).  Plaintiffs were charged with preserving those assets for the rightful shareholders of Yukos Oil.  (Dkt. 428 at 100).  The Netherlands litigation with Promneftstroy was ongoing until 2019, when the Yukos Group successfully defeated Promneftstroy's claims in the Dutch Supreme Court.  (Dkt. No. 428 at 101-102).

### *Bringing this action against Feldman*

Feldman was a trusted member of Plaintiffs' team -- an in-house lawyer who helped manage the Yukos Group's affairs and helped oversee the Yukos Group's litigation strategy.  (Dkt. No 428 at 117).  But Feldman was secretly disloyal and dishonest, and, as Plaintiffs came to learn, Feldman had engaged in a continuous course of conduct in which he put his own interests ahead of the companies he served.  (Dkt. 428 at 120-123).

Plaintiffs filed the initial Complaint against Feldman in this action on June 25, 2015, seeking redress in connection with a number of schemes Feldman perpetrated, or attempted to perpetrate, that were to further his own personal interests and that were dishonest and disloyal to the Yukos Group.  (Dkt. No. 1).

***The Julius Baer Scheme***

After the close of the initial discovery period in this action, Plaintiffs learned that Feldman had perpetrated yet another scheme at the expense of the companies he served as director:  a kickback scheme pursuant to which Feldman arranged for another Yukos Group employee, Dmitri Merinson, to receive over $2.6 million in kickbacks from Julius Baer.  (Dkt. No. 430 at 141-151; Dkt. No. 432 at 27-41; Dkt. No. 438 at 21).  Julius Baer was a Swiss bank that Feldman engaged to effect certain large foreign exchange transactions of Yukos Group funds after Feldman arranged for Julius Baer to pay a secret, illicit "finder's fee" to his accomplice, Dmitri Merinson.  (Dkt. No. 432 at 45-47).  Julius Baer then charged the Yukos Group transaction fees that were higher than what would have been commercially reasonable, so as to make sufficient profit for itself after paying the substantial kickbacks.  (Dkt. No. 438 at 20-21).  Upon learning of the scheme from Julius Baer in 2017, Plaintiffs obtained leave to amend their complaint to assert claims arising from the scheme.  (Dkt. 322).

The revelation of the Julius Baer Scheme also exposed the fact that Feldman had actively concealed his involvement in the scheme by lying in his deposition testimony.  (Dkt. No. 366).  Feldman concealed his involvement in the scheme by committing perjury when he was deposed before Plaintiffs learned of the scheme.   (*Id.*)  Under oath, Feldman categorically denied having received any kickbacks from financial institutions.  Feldman also denied having any reason to think that Merinson had received any "form of introductory fee or kickback."  (Dkt. No. 432 at

47).[2]  When deposed again after discovery was re-opened, Feldman admitted that he had approved Julius Baer's secret payments to Merinson.  (Dkt. No. 366-1 at 33).  Feldman also disclosed that Merinson later "loaned" Feldman $1.2 million so that Feldman could buy a house in the Hamptons.  (Dkt. No. 432 at 41).

### The Trial and the Appeal

A jury trial was held on Plaintiffs' claims in March 2019, and the jury returned a verdict finding Feldman liable for breach of the duty of loyalty or good faith in connection with the Julius Baer Scheme and the Trust Scheme.  (Dkt. 422).[3]  The Court awarded nominal damages on each of those two claims.  (Dkt. 422-1; Dkt. No. 442 at 13).  In his new motion, Feldman falsely asserts that the jury found that he had caused "no harm."  (Feldman's Relief from Judgment Motion, Dkt. No. 457 (the "Motion"), at 1).  In fact, the jury found that Feldman had embezzled more than $2.6 million from Plaintiffs.  But Plaintiffs were precluded from seeking those damages from Feldman because, in an earlier settlement, Julius Baer had already paid Plaintiffs for the full extent of their losses.  (Dkt. No. 430 at 151).

The Court issued the Judgment on March 26, 2019.  (Dkt. No. 423).  Feldman thereafter appealed to the Second Circuit, which substantially affirmed the Judgment on October 8, 2020.  *See* 977 F.3d 216 (2020).

---

[2]     Feldman also perjured himself on other issues.  In his December 16, 2015 deposition testimony, Feldman testified that that he had not promised to give Mr. Dietz or any other person or entity associated with Promneftstroy information concerning the Yukos Group.  But two Cooperation Agreements -- including the one Feldman signed a mere 6 weeks before the deposition -- explicitly state the consideration to be provided by Feldman in exchange for the Promneftstroy entities' agreement to pay Feldman's legal fees.  The consideration provided by Feldman was Feldman's promise to provide those entities with information concerning the Yukos Group.  (*See* Dkt. Nos. 367 and 388).

[3]     The Trust Scheme involved Feldman secretly withdrawing $500,000 from a trust as to which he was the trustee and investing it under his own name.  (Dkt. No. 428 at 70-71).

***Feldman's New Allegations***

In his new Motion, Feldman asserts that Plaintiffs hacked his emails to gain access to his attorney-client communications and his attorneys' work product and that Plaintiffs used those materials against Feldman in this litigation. But those outrageous, and defamatory allegations have no basis in fact. Plaintiffs had no role in the alleged hacking of Feldman's emails. Plaintiffs have never heard of Aviram Azari, the alleged hacker, and did not engage him, directly or indirectly, to hack Feldman's emails. (Declaration of David A. Godfrey, dated April 25, 2025, ("Godfrey Decl") ¶ 4). Neither Plaintiffs nor their counsel in this action have had any access to Feldman's allegedly hacked emails. Neither Plaintiffs nor their counsel in this action have ever seen or had access to Feldman's attorney-client communications or his attorney's work product. Nor did they ever use such materials against Feldman in this litigation. (Godfrey Decl. ¶¶ 5-6; Declaration of Jeffrey D. Brooks, dated April 25, 2025, ("Brooks Decl.") ¶¶ 5-6).

## **ARGUMENT**

### I.    **Feldman's "Motion" Should Be Stricken Because It Does Not Comply with this Court's Rules**

Feldman was admitted to the New York bar in 1997, litigated on behalf of the U.S. Securities and Exchange Commission for three years, and spent years helping manage and participating in litigation for the Yukos Group. In addition, Feldman spent four years litigating this action in this Court. And yet, he has filed papers on this motion that brazenly defy this Court's Rules. His actions in this regard are no doubt intentional. Feldman knows what a Notice of Motion is, and Feldman knows that legal papers have to be double-spaced. But he chooses to thumb his

nose at this Court's rules because he is trying to paint himself as a downtrodden, unsophisticated everyman who is being unfairly persecuted by cruel corporations and their professional attorneys.[4]

Although Feldman and an accomplice embezzled more than $2.6 million from the Yukos Group that they have never paid back, Feldman states that he cannot afford counsel. Be that as it may, this Court's Local Rules are available for free on the Internet, and Feldman, an attorney for 27 years, lacks neither the ability to read nor access to a computer. What Feldman lacks is respect for this Court and its Rules. Feldman's papers include no Notice of Motion, nor has Feldman presented the Court with a proposed order to show cause.[5] Instead, Feldman has filed a single memorandum of law, which he has sworn to under oath, which he calls a "Motion," and which is single-spaced, rather than double-spaced, throughout.[6] In addition, Feldman's memorandum of law contains approximately 12,500 words – nearly 4,000 words over the applicable word limit – and fails to include the required certification that the document complies with the word-count limitations.[7]

---

[4]     That is also why Feldman's papers are presented like the stream-of-consciousness ramblings of a high-school drop-out writing *pro se* from his cell at Rikers Island. Feldman is well educated and knows that the word "equanimity" means "the quality of being calm and even tempered." (Webster's II New College Dictionary). Yet, he intentionally misuses it repeatedly in his "Motion" as though it means "equity" or "fairness." *See* Feldman's Motion at 17 ("Equanimity is the hallmark of the U.S. judicial system"); at 24 ("Allowing these abuses to stand is an affront to all aspects of equanimity that we strive to uphold."); at 21 ("Setting aside the verdict would also support equanimity …"); at 21 ("… the demands for equanimity in the courts call for the judgment to be set aside with prejudice.") Feldman apparently hopes that if he presents himself as a good-natured half-wit, the Court will forget that he is a sophisticated liar and thief.

[5]     Local Rule 7.1 provides that all motions must include a "notice of motion, or an order to show cause signed by the court, which must specify the applicable rules or statutes pursuant to which the motion is brought, and must specify the relief sought by the motion."

[6]     Local Rule 7.1(b)(3) provides that "all text must be double-spaced, except for headings, text in footnotes, or block quotations, which may be single-spaced."

[7]     Local Rule 7.1(c) provides that "[i]f filed by an attorney or prepared with a computer, briefs in support of and in response to a motion (except for motions for reconsideration) may not exceed 8,750 words." Feldman's "Motion" is in truth a brief, and it was prepared with a computer. But it contains 12,506 words. Local Rule 7.1(c) also provides that "[i]f a brief is filed by an attorney or prepared with a computer, it must include a certificate by the attorney, or party who is not represented by an attorney, that the document complies with the word-count limitations." Yet, Feldman's "Motion" includes no such certificate.

The Court should have no tolerance for Feldman's shenanigans. Even more typical *pro se* litigants must comply with the Court's rules. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (stating that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law"). Given Feldman's experience as an attorney, he should be given no extra latitude in this regard. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all."); *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 133 (S.D.N.Y. 2020) (*pro se* attorney not entitled to special solicitude afforded to *pro se* parties); *Perez v. U.S. Immigration & Customs Enf't*, No. 19-CV-3154 (PGG) (JLC), *3, 2020 WL 4557387 (S.D.N.Y. Aug. 6, 2020) ("Although Perez is technically a *pro se* plaintiff, he is also an experienced attorney and, accordingly, is not entitled to the same solicitudes that are normally afforded to *pro se* parties.").

Accordingly, Feldman should be held to the Rules, and Feldman's non-compliant "Motion" should be stricken.

## II. Feldman Has Misled the Court about the United States Attorney's Office's Alleged Verification of His Factual Allegations

In his "Motion," Feldman tells the Court that the United States Attorney's Office for the Southern District of New York has endorsed the factual allegations contained therein (Motion at 2), but Feldman's assertion is not true. The U.S. Attorney's Office has not vetted or verified Feldman's allegations of fact. Nor has the U.S. Attorney's Office endorsed any of Feldman's legal arguments.

In his "Motion," Feldman states that, "upon review of the present motion, the US Attorney's Office wrote via email that they, 'do not see anything from my read through that is actually inaccurate.'" (*Id.* at 2). But even that quotation was misleading. In fact, the full quoted sentence in the AUSA's email to Feldman stated that:

> *I take no stance or position on any substance*, but I do not see anything in my read through that is factually inaccurate.

(Motion, Ex. 12, at 71) (emphasis added). Feldman deceptively omitted the crucial first part of the sentence disclaiming any position on the substance of his motion.

Moreover, the U.S. Attorney's Office has subsequently clarified that it has not endorsed any of Feldman's factual allegations or legal arguments:

> To be very clear, our office did not—and does not—take any position on any of the factual allegations or legal arguments in Mr. Feldman's motion, nor did we provide any advice or guidance to Mr. Feldman. My statement that I did not see any factual inaccuracies was solely limited to my view that Mr. Feldman had not inaccurately characterized his correspondence with our Office or the FBI. The statement in no way opined or endorsed any of the factual allegations or legal arguments in Mr. Feldman's draft Rule 60(b) motion.

(Brooks Decl. ¶ 7 and Exhibit A thereto). Thus, Feldman's attempt to present his motion as approved by the U.S. Attorney's Office was sophistry intended to mislead the Court.

## III.  Feldman Is Not Entitled to Relief under Fed. R. Civ. P. 60(b)

### A.  Feldman's Motion Is Barred by the Time Limitation in Fed. R. Civ. P. 60(c)(1).

Feldman has brought this motion to set aside the Judgment pursuant to Fed. R. Civ. P. 60(b). Rule 60(b) sets forth the grounds on which a court, in its discretion, can rescind or amend a final judgment or order. It provides, in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, . . .; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. *See House v. Sec. of Health & Hum. Servs.*, 688

F.2d 7, 9 (2d Cir. 1982) (reversing decision to relieve judgment because record lacked any showing of "extraordinary circumstances"). Final judgments, however, should not "be lightly reopened." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (affirming denial of Rule 60(b) relief). "[R]elief under [Rule] 60(b)(6) may be granted only when 'exceptional' or 'extraordinary' circumstances exist." *House*, 688 F.2d at 9 (citation omitted). As a general matter, Rule 60(b) motions are "disfavored and reserved for exceptional cases." *Simon v. United States*, No. 12-cv-05209 (ER), 2020 WL 832887, at *3 (S.D.N.Y. Feb. 20, 2020); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.").

Feldman states that he is seeking relief pursuant to Rule 60(b)(6), but he is not entitled to seek relief under that provision. Feldman's Motion is premised on alleged misconduct by Plaintiffs, his opposing party. A Rule 60(b) motion premised on alleged "misconduct by an opposing party" falls squarely under Rule 60(b)(3), which applies to Rule 60(b) motions based on "fraud …, misrepresentation, or misconduct by an opposing party." But "[a]ny motion pursuant to Rule 60(b) must be made within a 'reasonable time,' and in the case of Rule 60(b)(3), must also be made 'no more than a year after the entry of the judgment or order or the date of the proceeding.'" *Geo-Grp. Commc'ns, Inc. v. Chopra*, No. 15 Civ. 1756 (KPF), 2023 WL 6235160, at *6 (S.D.N.Y. Sept. 26, 2023) (citing Fed. R. Civ. P. 60(c)(1)). The Judgment at issue here was issued on March 26, 2019. Feldman filed his motion on April 10, 2025 – more than six years later. Thus, Feldman has missed the one-year time limitation applicable to Rule 60(b)(3) by more than five years. For that reason alone, his motion must be denied.

Feldman appears to believe that because he has missed the one-year time limitation applicable to Rule 60(b)(3) that he is free to choose to proceed under Rule 60(b)(6) instead:

> To proceed under Rule 60(b)(1)-(3), the motion must be filed within one year from the judgment.  As that time has passed, I must rely on one of the remaining three reasons and do so within a *reasonable time* . . . .  As detailed below, I seek to have the judgments set aside pursuant to FRCP 60(b)(6), which includes *any other reason that justifies relief*.

(Motion at 19) (emphasis in original).  But Feldman is wrong.

Rule 60(b)(6) can be invoked only "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Nemaizer*, 793 F.2d at 63; *see also Jeanty v. City of Utica*, No. 23-369, 2024 WL 4429417, at *3, n.2 (2d Cir. Oct. 7, 2024), (holding that "relief under the catch-all provision of Rule 60(b)(6) was unavailable because [moving party's] arguments implicated the more-specific Rules 60(b)(2) and (3)"); *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 758 (2d Cir. 1981) (recognizing that clause (6) applies where no other clause is at issue).  "The six provisions of Rule 60(b) are "mutually exclusive."  *Encarnacion v. Olivo*, No. 9:21-CV-986 (MAD/TWD), 2024 WL 4651770, at *2 (N.D.N.Y. Nov. 1, 2024) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393(1993)); *see also Stevens v. Miller*, 676 F.3d 62, 67-68 (2d Cir. 2012) (explaining that clauses are mutually exclusive to prevent parties who "may attempt to use Rule 60(b)(6) to circumvent the one-year time limitation in other subsections of Rule 60(b)").  A court "may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 55 (2d Cir. 1989) (citations omitted).

Because Feldman's Motion is premised on alleged "misconduct by an opposing party," which is addressed by Rule 60(b)(3), his attempt to invoke Rule 60(b)(6) must be rejected.  *See Horphag Rsch. Ltd. v. Henkel Corp.*, No. 00 Civ. 0438(MBM), 2004 WL 117601, at *3 (S.D.N.Y. Jan. 26, 2004) ("[A] Rule 60(b)(6) claim is properly rejected if the reasons given for relief from judgment under that clause can be considered in one of the more specific clauses of Rule 60(b)").

Feldman's Motion can only properly be considered a motion pursuant to Rule 60(b)(3), and because it was brought more than five years after the one-year limitation period, his motion must be denied. *See Wang v. Int'l Bus. Machs. Corp.*, 839 F. App'x 643, 646 (2d Cir. 2021) ("The one-year limitation period for Rule 60(b)[(1)—(3)] motions is absolute.") (quoting *Martha Graham Sch. & Dance Found, Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 466 F.3d 97, 100 (2d Cir. 2006)).

Moreover, even if Feldman could rely on the "reasonable time" limitation standard, his Motion would still need to be denied because it is unreasonably late. As a general matter, a request for relief under Rule 60(b)(6) is unreasonable and will not be granted where the applicant fails to move for "relief promptly." 12 MOORE'S FEDERAL PRACTICE § 60.48(3)(c) (citing *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 462 (2d Cir. 1994)). Plaintiff himself admits that he learned of the alleged email hacking in July 2022 – almost three years before he filed his motion. (Motion at 3). On November 16, 2023, Feldman gave a witness impact statement at Mr. Azari's sentencing hearing. In that statement in open court, Feldman accused Plaintiffs of being behind the alleged hacking of his emails and blamed the outcome of the trial on Plaintiffs' alleged use of attorney-client communications against him. (*See* Brooks Decl. Exhibit C). But Feldman still waited an additional 17 months to bring this Motion. A delay such as that is patently unreasonable. *See Truskoski v. ESPN, Inc.*, 60 F.3d 74, 76 (2d Cir. 1995) (holding that motion filed eighteen months after grounds for motion became apparent was not filed within a "reasonable time" under Rule 60(b)(6)).

**B.      There Is No Evidence that Plaintiffs Were Involved in the Alleged Hacking of Feldman's Emails or that Plaintiffs Had Any Access to His Attorney-Client Communications.**

Even if Feldman's Motion were not barred by the time limitations of Rule 60(c)(1) (which it is), the Motion nevertheless would have to be denied for another even more fundamental reason.

Feldman has presented no actual evidence that Plaintiffs were involved in the alleged hacking of his emails, and Feldman has presented no actual evidence that Plaintiffs had any access to his attorney-client communications during this litigation.  In fact, the only actual evidence before the Court that directly addresses those two questions comes from Plaintiffs.  It establishes that Plaintiffs had no direct or indirect role in any alleged hacking of Feldman's emails, and it establishes that Plaintiffs had no access to any of Feldman's attorney-client communications and did not use any such communications against him in this litigation.  *See* Godfrey Decl. ¶¶ 4-9; Brooks Decl. ¶¶ 4-6.

In a Rule 60(b) motion, the burden to demonstrate entitlement to relief falls on the moving party, and the evidence in support of the motion to vacate a final judgment must be "'highly convincing.'"  *Circuito Cerrado, Inc. v. LV Foods*, 296 F.R.D. 122, 125 (E.D.N.Y. 2013) (quoting *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)).  When moving pursuant to Rule 60(b)(3), the moving party, to be entitled to relief, must prove the opposing party's misconduct by "clear and convincing evidence."  *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).  As the Supreme Court has explained, a party would achieve the clear and convincing evidentiary standard "only if the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence [its adversary] offered in opposition." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted). The Second Circuit has similarly held that "[c]lear and convincing evidence is evidence that satisfies the factfinder that it is highly probable that what is claimed actually happened and it is evidence that is neither equivocal nor open to opposing presumptions." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 260 (2d Cir. 2021).  Feldman has not met that standard.

Feldman asserts that a hacker retained on behalf of the Plaintiffs illegally accessed his email accounts and that Plaintiffs then used Feldman's emailed attorney-client communications to gain an unfair advantage in this litigation. But Feldman has produced no actual evidence of Plaintiffs' alleged role in this alleged email hacking, and Feldman has produced no actual evidence that Plaintiffs' counsel ever had access to any of Feldman's attorney-client communications or ever used such communications to gain an advantage in this litigation.

Feldman has failed to provide any such evidence because his allegations are entirely false. In truth, Plaintiffs had no involvement in any alleged hacking of Feldman's email accounts. Plaintiffs never engaged Mr. Azari or anyone else, whether directly or indirectly, to hack Mr. Feldman's email accounts. Plaintiffs have never had access to any hacked emails of Feldman's. Neither Plaintiffs nor their counsel have ever had access to any attorney-client communications of Feldman or to the confidential attorney work-product of Feldman's counsel. And obviously, therefore, neither Plaintiffs nor their counsel ever used Feldman's attorney-client communications or his attorney work-product against him in this litigation or anywhere else. (Godfrey Decl. ¶¶ 5-6; Brooks Decl.") ¶¶ 5-6).

Feldman's offensive and defamatory allegations against Plaintiffs have no basis in fact. And the so called "evidence" he has provided is woefully insufficient to establish wrongdoing by the Plaintiffs under any evidentiary standard. It certainly fails to meet the clear and convincing standard applicable here.

Feldman has apparently been told by law enforcement that "a group that included Aviram Azari" hacked his email accounts. (Motion at 1). According to news reports, Mr. Azari had been involved in hacking thousands of people around the world. But Feldman has no evidence that any

hacking by Mr. Azari or anyone else was conducted on behalf of Plaintiffs.  All Feldman has is conjecture and inuendo.

First, Feldman presents a large number of emails that he alleges establish that Mr. Azari sent many phishing emails to several of Feldman's email accounts in an effort to hack his emails. Feldman, of course, has no personal knowledge that this alleged hacking took place.  Feldman apparently received the bulk of these documents from a journalist at Reuters and from the U.S. Attorney's Office. Feldman, however, fails to provide any affidavit or declaration from someone with knowledge of the alleged evidence he presents.  Feldman presents no testimony explaining how and where this evidence was obtained or its chain of custody and no testimony explaining how or why these emails allegedly prove that Mr. Azari hacked Feldman's email accounts.

But even if one accepts that Mr. Azari hacked Feldman's email accounts, there is no evidence that Mr. Azari's hacking was done on behalf of Plaintiffs or that Plaintiffs ever had access to Feldman's attorney-client communications.  Feldman's attempts to link Plaintiffs to Mr. Azari are based entirely on innuendo and conjecture.  Feldman presents a number of invoices that purport to be from Nerosia Ltd. to Vantage Intelligence, Inc., a global intelligence and strategic advisory firm one of the proprietors of which has on occasion done work for Plaintiffs and their affiliates.

Feldman asserts that "[t]he invoices and the parties involved provide evidentiary support as to who was paying for the hacking campaign against [him] throughout the S.D.N.Y. litigation." (Motion at 13).  But that is not correct.  The invoices demonstrate no such thing.  Feldman presents no evidence that the invoices to Vantage Intelligence have any connection to any alleged computer hacking or to the alleged hacking campaign against him.  News reports indicate that Mr. Azari was an Israeli private investigator.  Feldman fails to provide any testimony that would justify a presumption that these invoices to Vantage Intelligence relate to illegal hacking activities rather

than to legitimate investigatory work. Notably, the U.S. Attorney's Office has not implicated Vantage Intelligence or anyone associated with it in Mr. Avari's alleged hacking activities. Certainly, Feldman has presented no evidence here that would allow this Court to make that determination.

Moreover, there is no evidence that these invoices to Vantage Intelligence had anything to do with Plaintiffs or their affiliates. In fact, they did not. *See* Godfrey Decl. ¶¶ 7-8. While Yukos Group entities have in the past engaged Notional Holdings, an entity through which Gretchen King provides services, the Yukos Group did not engage Gretchen King, Notional Holdings, or Vantage Intelligence for any work in connection with Mr. Azari or Nerosia Ltd. In fact, the Yukos Group has never engaged Vantage Intelligence for anything at all. The invoices that purport to be from Nerosia Ltd. to Vantage Intelligence, Inc. do not relate to any work being done for Plaintiffs or their affiliates, and neither Plaintiffs nor their affiliates ever paid Vantage Intelligence in connection with those invoices or that work or for anything at all. Although the Yukos Group has never engaged Vantage Intelligence, Vantage Intelligence has hundreds of clients, and those invoices presumably relate to work done for one or more of them. (Godfrey Decl. ¶¶ 7-8).

The only invoice Feldman has provided that has a connection to the Plaintiffs is Feldman's Exhibit 35. Exhibit 35 is a March 15, 2015 invoice from Notional Holdings to Mojave East, a Yukos Group company. The invoice concerned the (entirely legal) collection of data related to an entity called Renaissance Capital. The invoice was not provided to Feldman by the US Attorney's Office, and the invoice has no connection whatsoever with Mr. Azari or with the alleged hacking of Feldman's emails. Feldman appears to have attached it merely to cause confusion and to create the false impression that there is an invoice linking Plaintiffs or their affiliates with Mr. Azari or the alleged hacking of Feldman's emails. *See* Godfrey Decl. ¶ 9.

Feldman attempts to create similar confusion in other ways as well. In a section of Feldman's "Motion" captioned "July 13, 2017 Amended Complaint," Feldman implies that Plaintiffs learned of the facts underlying the Julius Baer Scheme, which was first pled in Plaintiffs' Second Amended Complaint, dated July 13, 2017, through Mr. Azari's alleged email hacking. (Motion at 15). But Feldman's implication is not true.

As Plaintiffs explained to the Court when they moved for leave to file a Second Amended Complaint in July 2017, it was bank Julius Baer itself that revealed to Plaintiffs the facts constituting the Julius Baer Scheme. (*See* Dkt. No. 310 at 4-10). Julius Baer set up a meeting with the Yukos Group's counsel on March 6, 2017 because the bank was conducting a review of all of its client accounts that were introduced by third-party finders, to confirm that the clients had approved the third-party finder arrangements. That was the first time that the Yukos Group learned Julius Baer had a finder's fee arrangement with Yukos Group employee Dmitri Merison. Subsequently, Julius Baer provided additional details and documents regarding the Julius Baer scheme. The last batch of documents was sent by Julius Baer on July 3, 2017, and those documents revealed that Feldman had approved of and participated in the fraudulent finder's fee scheme. (*See* Declaration of Bernard O'Sullivan, dated July 12, 2017, Dkt. No. 311, attached as Exhibit B to the Brooks Decl.). It was on the basis of those documents from Julius Baer -- and not from any alleged email hacking -- that Plaintiffs gained the knowledge of the Julius Baer Scheme necessary to draft the Second Amended Complaint.[8]

Feldman also argues that alleged phishing emails sent from 3/16/2016 to 3/31/2017 using the delphi.bm email address demonstrate that Plaintiffs must have been behind the alleged email

---

[8]    Of course, Plaintiffs would have learned of the Julius Baer Scheme much sooner if Feldman had not perjured himself at his deposition in this action – denying, under oath, that he had any knowledge of any finder's fees paid to Merison – in order to conceal his wrongdoing from Plaintiffs.

hacking.  (Motion at 4).  Delphi is the fund management firm running the UFG fund in which Feldman invested under his own name Yukos Group assets after he withdrew those assets from a trust of which he was the trustee.  (That was the basis of the "Trust Scheme," for which the jury found Feldman liable).  Feldman argues that "[t]he investment was well known by David Godfrey ("Godfrey") and Steven Theede ("Theede"), the two driving forces of the litigation in the S.D.N.Y. against [Feldman], as well as lawyers and accountants working for Godfrey but was not known publicly.  The name of the fund management firm is even less well known."  (*Id.*).  Feldman further asserts that "[t]he only way Azari and the hacking teams . . . would know that the use of Delphi would deceive me into opening an email was if someone from [the Yukos Group] informed them of that.  Insider information was required."  (*Id.*).  But again, Feldman's assertions do not withstand scrutiny.  Contrary to Feldman's assertions, Feldman's connection to the UFG investment and the Delphi management firm were publicly known by March 2016.  The initial Complaint in this action was publicly filed on June 25, 2015, and that Complaint sets out the facts of Feldman's Trust Scheme, naming both the UFG Private Equity Fund II, LP and Delphi Management.  (*See* Dkt. No. 1 at 15-17).  Thus, no "insider information" would have been required for any hacker to connect Feldman and Delphi in 2016.

Feldman also fails to provide any evidence whatsoever that any of his attorney-client communications or any of the confidential  attorney work product of his attorneys was used against him in this litigation.  Feldman asserts, without basis, that Plaintiffs "accessed material from my email accounts that was covered by the attorney client privilege, likely informing their litigation strategy . . . ."  (Motion at 17).  But Feldman does not even speculate as to what that strategic advantage might have been.  Feldman fails to cite any example of any motion or any cross-examination by Plaintiffs' counsel or anything else that demonstrates or even suggests that

Plaintiffs' counsel was in possession of Feldman's attorney-client communications. Feldman fails in this regard because there are no such examples. The idea that Plaintiffs' counsel had access to Feldman's privileged communications is a spurious lie. Plaintiffs' counsel had no access to any of Feldman's privileged material, and Plaintiffs' counsel never used any such material to inform their litigation strategy or for any other purpose. *See* Brooks Decl. ¶¶ 5-6. It is telling that it is Feldman alone making these defamatory allegations. Notably, the attorneys from Mandel Bhandari LLP who represented Feldman in this litigation have not joined in his allegations. And, of course, the U.S. Attorney's Office has now made clear that it is not endorsing any of Feldman's factual allegations or legal arguments. Feldman – a liar and a thief – stands alone.[9]

### C.    Feldman Has Not Suffered Any "Undue Hardship"

Even if Feldman's Motion were not fatally deficient for the reasons presented above (which it is), Feldman's Motion would still need to be denied for the additional reason that Feldman has not suffered any extreme and undue hardship. A plaintiff is entitled to Rule 60(b)(6) relief "only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quoting *Nemaizer*, 793 F.2d at 63).

Feldman argues that the jury verdict in this case has been "debilitating" to his career, noting that his law license was suspended for one year as a result of the misconduct proven in this action.

---

[9]    Assuming Feldman's emails were indeed hacked, Plaintiffs do not know who was behind such hacking or what their motivations may have been. In contrast to Feldman, Plaintiffs are reluctant to cast aspersions on other parties without evidence. But suffice it to say that Feldman was involved in things other than this litigation that may have made him a target of email hackers. Feldman ran an international gambling operation and had served on the Board of Directors of a number of non-Yukos Group energy companies. In addition, of course, Feldman took large sums of money from people affiliated with Promneftstroy, the Vladimir Putin allies who purchased Yukos Finance at Putin's sham forced bankruptcy sale. It is conceivable that Putin and his allies may have wished to keep tabs on what Feldman was doing with their money.

(Motion at 21).   But there is nothing extreme or undue about the consequences that Feldman has incurred as a result of the verdict in this case.   The jury verdict against Feldman in this action was supported by significant evidence.   Indeed, Feldman's own trial testimony confirmed the underlying facts of the Trust Scheme and the Julius Baer Scheme, the two schemes in which the jury found Feldman had breached his fiduciary duties.   (*See* Dkt. No 432 at 32-41 and 75-80).   In the latter scheme, Feldman and an accomplice had embezzled more than $2.6 million from Plaintiffs – money which neither Feldman nor his accomplice were ever required to repay.[10]   The Court awarded only nominal damages against Feldman – which were neither "extreme" nor "undue."   Indeed, many reasonable observers might find that a judgment that allowed someone who embezzled more than $2.6 million to keep the stolen funds is the exact opposite of "unduly harsh."   Nor is there anything extreme or undue about any reputational harm Feldman has endured because of the jury verdict against him.   Feldman breached his fiduciary duties to Plaintiffs, and the fact that his reputation was damaged by that wrongdoing is entirely fitting and proper.

The interests of justice and finality require that the Judgment in this action remain in place. Feldman's Motion must be denied.

---

[10]    Plaintiffs were unable to seek damages from Feldman in connection with the Julius Baer Scheme because Julius Baer had already settled with the Yukos Group and had already paid the Yukos Group for 100% of its losses from the Julius Baer Scheme.

## **<u>CONCLUSION</u>**

For all the foregoing reasons, Plaintiffs respectfully submit that Defendant's Motion to set aside the Judgment should be denied, together with any further relief that this Court deems just and proper.

Dated: New York, New York
        April 25, 2025

MORRISON COHEN LLP

By:  /s/ *Jeffrey D. Brooks*
        Jeffrey D. Brooks

909 Third Avenue
New York, New York 10022
(212) 735-8600
jdbrooks@morrisoncohen.com

*Attorneys for Plaintiffs*

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1 of this Court, I hereby certify that the total number of words in this memorandum of law, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 6,799.

 /s/ *Jeffrey D. Brooks*
Jeffrey D. Brooks
